Okay, next matter, Madam Clerk. In re. CPESAZ Liquidating, Inc. Douglas A. Rubel, Counsel for Appellants Robert Bonetti, et al. Matthew C. Blickenstrafer, Counsel for Appalee, Oxford Restructuring, Advisors, LLC. Okay, Mr. Rubel, how much time would you like to reserve, if any? I will reserve five minutes. Can you hear me okay? Yes, we can. Thank you. Okay, great. Thank you. Go ahead. Thank you for having me three hours ahead of a couple of you and many more ahead of the rest. I'm in North Carolina, so thank you for letting me appear. My colleagues, Mr. Johanson and Mr. McNutt, apologize for not being available today. You're honored to argue it. So, in some ways, you stuck with me. This is the third appeal we've had in this case. There's some institutional knowledge, therefore, I guess, Judge Gann, you were involved in the first one. That had to do with the confirmation order. Our clients, the individual lease-out participants, felt they were left without a voice in that process. Unfortunately, you disagreed with us and upheld the confirmation order. We had requested, among other things, a direction pass-through vote for our clients. You may recall that. Judge Ferris, you were involved in the second one. That had to do with an attorney's fees issue with respect to debtors counsel. We thought the bankruptcy court didn't award enough and you upheld the bankruptcy court. This one is the breaker. You haven't been involved in any of these. So, just briefly, there were three companies, two of whom first filed bankruptcy, CEPAS Arizona and Novellus, which is the arm, the independent subsidiary that did work in Northern California, and then there's CEPAS California, which was the Southern California arm. The two California entities were profitable at the time of the bankruptcy. Our belief is that the real problem here was with Arizona. Arizona was having problems with its contracts with the state. There was also some lawsuits that were involved, personal injury lawsuits, a wrongful death action, for example, that was causing problems and a drain on CEPAS Arizona. Arizona is important because three companies won ESOP. That ESOP is CEPAS Arizona and only the employees of CEPAS Arizona can be participants in the ESOP. We got involved on behalf of the group of 96, if you will, the individual participants, because as soon as this bankruptcy was filed and word got out, they contacted us and we tried to bring a voice throughout this proceeding to the ESOP participants. We participated in the May 28, 2020, 341A meeting of creditors. From that, we learned certain information that we passed on to the ESOP trustee with respect to an inflated 2018 year-end valuation. That became part of our client's proof of claim, also was one of the proofs of claim that was filed. With respect to the proofs of claim, there's a September 30, I believe, bar date. We didn't have any word from the ESOP trustee or anyone whether the ESOP trustee was going to be filing any proofs on behalf of the ESOP or on behalf of the individual participants, so we filed, well the numbers vary, but there were three individuals who had filed their own. They had been receiving notices from the court. Included in that was, of course, the claim for that they were entitled to their benefits as unsecured creditors, a claim with respect to the inflated 2018 year-end valuation. What originally happened was the debtors objected. The debtors objected to it. That objection, omnibus objections, there were three of them. Those were dismissed by the court with leave to bring later. The liquidating trustee later brought them. Substantially the same arguments were made and the court ruled A, that our clients and the individual participants had no right to file proofs of claim that only the ESOP participants could, and B, that their claims were not as unsecured creditors, that they're equity only. With respect to the ability of the individual participants to file their own proofs of claim, this is a policy issue really, dealing with ERISA and bankruptcy law and, you know, trying to give effect to both here. There's nothing in the trust agreement with respect to the ESOP trustee that specifically references bankruptcy. There's nothing in there that talks about filing proofs of claim. More importantly, I would submit to the court that under ERISA, Section 502 of ERISA, there are, which provides for civil causes of action and distinguishes between participants, beneficiaries, the Secretary of Labor, and fiduciary. So in this case, the ESOP trustee, 502A would allow, for example, a participant or a beneficiary to bring 502A1A, would bring a claim for failure to provide information or the annual reports that are required to be filed with the Department of Labor in complete form to them. Okay, that doesn't, I cite that as an example of something that is only... My question about 502 is it does give the individual participants a private right of action, but in most cases it doesn't say who that right of action is against and for what. I mean, you're right about the reports, but it, why do these people have a private right of action either in addition to or in lieu of the contractual claims a trustee has against the employer under the plan? Well, under the plan, the confirmation order paragraph, I believe... I meant the ESOP plan, excuse me, the ESOP plan. We have two plans in this case. Oh, I'm sorry. Well, it's a separate right that's granted by 502A and 502A1B allows a participant or a to enforce his rights under the terms of the plan, the ESOP plan, or to clarify his rights to feature benefits under the terms of the plan. I submit to you that that affords them the opportunity to file their own proof of claim. As I understand, I'm not the bankruptcy expert, but as I understand bankruptcy, they file their proof of claim if there's an objection to a claim that becomes a bankruptcy. And that happened, right? There was an objection. So what then? So what then? We should be entitled to prosecute, we, our clients, should be entitled to prosecute their proofs of claim. Or, as I've seen from many bankruptcies, we have a client in Revlon, we have a client in Party City, and obviously those are extremely complicated bankruptcies and really don't relate to this one. But I've seen the background. I've seen the debtor and the debtor's counsel and from all the parties involved to try to resolve claims and to work with, for in this case, the ESOP trustee. So for example, where we filed a claim that said, well, we believe that the violation of ERISA with respect to the 2018 year-end valuation was for $500,000. The ESOP trustee filed a proof of claim based on the information that we, counsel, provided to him, did an independent valuation, and asserted a claim for, I believe, $255,150. Claim 276, I believe. So there's a difference in the amount, and it's important that our client keep a voice in this because the liquidating trustee is able to resolve and settle these. If our clients aren't involved and have an ability to protect their damages claim. Can't they sue the ESOP trustee? They have a direct contractual relationship with the ESOP trustee. Can they sue the ESOP trustee? Yeah. I mean, he owes duties to them if he messes up those duties. They can sue the ESOP trustee. They can sue the fiduciary. That gives them a seat at the table, doesn't it? Mm-hmm. That gives them a seat at the table, doesn't it? Well, it gives them a seat at the table in a separate piece of litigation. Now, in all honesty, there is a separate piece of litigation now in Tucson. The ESOP trustee is not involved in that. Our law firm is not a counsel of record in that case. But the individual participants have sued for, among other things, the individual fiduciaries, not the ESOP trustee. Well, the former ESOP trustee, not the present one. The former ESOP trustee was the trustee until eight days before the filing of the bankruptcy, Mr. Terriano. Eight days beforehand and continuing to the present, Mr. Paredes and his company are now the trustee. Mr. Paredes, as I understand the complaint, not part of that complaint. Mr. Terriano is because he was involved in the 2018, as well as the members of the board of directors. But the point I'm trying to make is your clients do have claims against the ESOP trustee if the ESOP trustee breaches the trust, right? Yes, they have claims against it. That's not the most efficient way to try to resolve it within the context of the bankruptcy, especially when you're dealing with, in this case, you're not really dealing with a matter of liability. The ESOP trustee testified in a Rule 2, the present one, testified in a Rule 2004 examination, you know, for the basis of his proof of claim, the dollar amount, and also that there was an improper methodology used and things of that nature. So, yes, but it's the difference in the amount and it's also, more importantly for purposes of the estate, it's getting the individuals who are personally liable to make good under ERISA for the losses to the estate, rather than, look, we filed proofs of claim. Well, you don't file proofs of claim to hold directors and officers liable, right? You file proofs of claim to hold the debtor liable. Yes. But the only thing, my point is that we're really filed the proof of claim, you're taking money from the residual estate to pay the claim, is really the point here, and that's why I suppose that the outside litigation is important to get the money from those who are personally liable, assuming they can prove their case, etc., etc., right? Right. So... I'll just point out, I've taken you down inside your five minutes, so if you can continue if you want, or you can reserve if you want, it's up to you, just wanted to remind you where you are. Oh, I'll reserve. Okay.  All right. Thank you. Mr. Blickensturfer. May it please the Court, good afternoon. In my case, nearly good evening, as in Mr. Rebels. Good morning to you, Judge Farris. Thank you. Matt Blickensturfer on behalf of Oxford Restructuring Advisors, LLC, the liquidating trustee. As a general proposition, Your Honor, ESOP, particularly ESOP, is the going to hold an interest in the equity. They're not going to be creditors of the debtors in the normal instance, because, of course, we're talking about stock of the debtor. Now, there are some case law developed exceptions to that general principle. The appellants have relied on some of these. Case law exceptions may apply when an ESOP participant, for instance, holds a promissory note in exchange for a redemption of shares, or in another case, the appellant cited where company shenanigans prevented the exercise of a right to redeem that stock and to liquidate that stock. We have none of that here, Your Honor. We are, in fact, a step removed from all of that, because these ESOP participants never held the stock of the company. So not only are they not creditors of the company, their equity interest is an indirect and beneficial one. So we're back to a general proposition where they are in the equity class, and therefore the proof of claim was defective from the start. These ESOP participants received only cash distributions rather than stock. They received those cash distributions not from the debtors at any point in time, but from the ESOP itself. They had absolutely nothing that they held that could be characterized as a debt of the debtors, no right to redeem the stock because they never held the stock, they had no put option for the stock because they didn't hold the stock, and they didn't have any promissory notes from the debtor, again, because they didn't hold any stock. This does not seem, I mean, it seems odd to me to say that the employees have only claims against the ESOP plan trustee. The debtor is not responsible for that, although, of course, the debtors board appointed the ESOP plan trustee and also appointed the committee that oversees the, I guess, oversees the ESOP plan trustees. Didn't that seem a little bit artificial? No, I don't think it is, Judge Ferris. I mean, it's the setup that, you know, ERISA mandates and, to some extent, the Internal Revenue Code mandates in this ESOP context, and you cannot, you have to have a separate trust for an ESOP, and there are, you know, that carries with it legal distinctions like this. It certainly could be the case, it's, you know, well, I shouldn't say it could be the case. It is the case. The debtors would owe certain obligations to the ESOP trust, but though, you know, those corporate distinctions are there for a reason. They're there because Congress set them up. They're there for tax reasons, and eventually, the residue of this estate, which the accountants are adamant it has to be this way so they receive those tax benefits that are associated with this type of retirement plan, the residue will pass through the trust, not directly from the liquidating trustee to the ESOP participants. So I don't think it's artificial, Judge Ferris, but to the extent, you know, you might characterize it that way, it's an artificiality that's, you know, mandated by ERISA and the tax code here. Does ERISA require that the employer choose the trustee? I'm not aware that it does, Your Honor, but I won't profess to be an expert on what ERISA has to say about the choice of the trustee. So I don't think... My point is that it seems to me the trust makes sense as a way of protecting the employees to make sure that their stock is someplace out of the employer's immediate hands, but the way this particular ESOP trust has been set up, it also turns into a shield for the employer, which may work, but it doesn't strike me as... I mean, I wouldn't have guessed that's the way this is supposed to work. Yeah, what I would say about that, Your Honor, is two things. First, the ESOP trustee has to be picked somehow, and that's going to be presumably the plan sponsor that is picking, you know, the trustee. The second thing I would say about that is what you and the panel were talking with Mr. Rubell about in detail, and that is it's a fiduciary position, and so there are fiduciary duties associated with that trustee position, which presumably are going to, you know, provide some guardrails there under which the ESOP trustee has to operate. So the point I would like to make, to emphasize about all of this is, you know, the appellants in effect concede all of this. They in effect concede they don't have a direct relationship with the debtors and that the monies that they are owed have to flow through the trust because they say they stayed in their brief. They don't think there's any legal basis for it to be otherwise because that would mean they lose the tax advantages that are the very purpose of setting this kind of ESOP plan in the first place. The appellants are trying to take this court way out on a limb, Your Honors, in, you know, trying to characterize what is an indirect equity interest as an unsecured creditor status, and there's just nothing in the statutes and the case law and anything that anybody has cited to this court or to the bankruptcy court that supports you going way out on that limb. And I would suggest that their argument proves way too much on top of that. If these ESOP participants who never received stock, who have no debt instruments issued by the debtors, could be in the class of unsecured creditors, then every ESOP participant in every ESOP-owned company will be an unsecured creditor. And there's just no support for any of that, Your Honors. I'd like to use the rest of my time, obviously, to entertain any questions, but also to discuss two independent grounds that the bankruptcy court relied on, aside from this primary point that the debtors did not hold, or excuse me, that the ESOP participants didn't hold debt of the debtors. The first one, well, both of these, I should say, are alternative grounds that were factual or evidentiary in nature, and therefore only reviewed for clear air. The first one was that the appellant's prucific claims lacked the necessary evidentiary support once challenged by the debtor and then, in turn, by the liquidating trustee. They attached no affidavits or declarations of any sort. The only thing that was included were the 2018 year-end ESOP statements, which, ironically, the appellants are simultaneously claiming are the inflated and inaccurate valuations of the company and its stock. Now, the appellants say, and they're not wrong about this, that that was the latest year-end statement they could have provided at the bar date point in time because the debtors were past the deadline for providing the most recent or what have you. But the hearing on these proofs of claim was a year and a half after the bar date. I mean, there was plenty of opportunity to provide some additional support for these proofs of claim once they were properly challenged by the debtor and then by the liquidating trustee. The other point is what they did provide, regardless of whose fault it was, at the bar date they had nothing else to provide. What they did provide doesn't establish either the amount or the valuation of their interest at any relevant point in time. And they never did provide that information to the bankruptcy court. So on the main part of their proof of claim, which was the part about their claim to unsecured creditor status based on their status as ESOP participants, they simply didn't provide anything that was relevant to valuing their interest. And on top of that, of course, it wasn't a debt. It was an equity interest that flowed through the ESOP trust. The second part of the proofs of claim, which is what most of the discussion in Mr. Rubel's time was about, was the idea that they had some causes of action that might be asserted against fiduciaries of the ESOP trust. The problem with that is twofold. First, to the extent they were trying to assert some claims on behalf of the ESOP trust, A, they weren't authorized to do so, and B, the ESOP trustee did so, the approved claim. To the extent they were asserting individual claims that they might have had under Section 502 of ERISA, those weren't claims against the debtors. Judge Farish, you were hitting on this. They were claims against individuals. And so that wasn't something that could be asserted in a proof of claim. There's nothing in their proof of claim because, of course, there was no support attached to it to indicate that they had some sort of cause of action against the debtors that they could assert. And as Mr. Rubel indicated, these same appellants filed a class action in the District of Arizona within the last few weeks. If the panel would like, either one of us or both of us can provide a site or a copy for that. These same appellants filed a class action for breaches of ERISA, not against any debtor, but against individual directors. And as Judge Farish pointed out, that's a different ball of wax than what we're dealing with here, which is proofs of claim. The second evidentiary or factual independent basis that Judge Saltzman relied on in disallowing these claims was that they were duplicated of what the ESOP trustee filed. Mr. Rubel indicated that at the time they filed it, the bar date was approaching. They didn't know what the ESOP trustee was going to do. Well, that's fine, but that doesn't change the fact that the ESOP trustee did assert proofs of claim and that those proofs of claim covered what the individual ESOP participants were submitting their proofs of claim on. The ESOP trustee submitted a claim in an indeterminate amount for the residue of the estate. That's exactly the primary point of the ESOP participant's proofs of claim. The ESOP trustee also submitted the claim that for 200-some thousand dollars that Mr. Rubel referenced, which was intended to cover the possible overvaluation of the company's share argument, unclear what the ESOP trustee thought that claim was vis-a-vis the debtors as opposed to individual, but nonetheless, it's there and the two claims, proofs of claim submitted by the ESOP trustee made what the ESOP participants submitted duplicative, as Judge Haltzman so found. For all of those reasons, Your Honor, the disallowance of the claims should be affirmed on any of the three independent bases on which Judge Haltzman relied. Thank you. Any questions from the panel for Mr. Blankenstuber? No. Okay. Back to you, Mr. Rubel. I have a question I forgot to ask before. We couldn't find any place in the excerpts of record the proofs of claim that your clients filed. Are they somewhere in? And also, we couldn't find them in the court's docket or the claims register. Any clues on how we can find them? They were filed under seal, Your Honor. So, I couldn't take them and perhaps I should have filed a motion with you and filed it under seal. They're in the court, the lower court. They were filed under seal. Do you want me to submit them to you? I don't know how to handle that, but that's why they're not included in the record excerpts. Okay. Well, we'll talk about that in deliberations. If we think we need more about that, we'll let you know. Let's leave it there. Anyway, go ahead, please. May I say a couple things just in response before getting to the big picture on, you know, this C Corporation versus S Corporation thing? Yes. As of the bar date, the most recent statement they had was the 2018 year-end valuation. Those statements. They didn't get anything else until last December. So, there weren't any 19 statements, 20 statements, 21 statements that they received until last December. So, they didn't have that information to provide at the hearing. That's number one. Number two, we have the value of the company. This was a liquidation. It was always a liquidation. The prior 2015, 16, 17, 18 valuations were as an ongoing concern. This is a liquidation. We know how much there is. It's $15.5 million. That's what was fetched from the sale of the California entities, from the liquidation and the sale of whatever in Arizona,  That's in the record. What's also in the record is that the liquidating trustee estimates that our clients are only going to get, oh, I don't know, $5 million. I doubt it will be that much, but somewhere over $10 million just disappeared in this bankruptcy. The other point. Look, we're dealing with a closely held company. S Corporation, C Corporation. It was a C. It was changed to an S. The participants don't know the difference between any of this stuff. They get statements, right, that say this is what's going on. Congress mandated that there be liquidity for closely held E-stops because there's no market for their stock. You don't trade it anywhere. So somebody has to buy the interest, whether it's the stock certificates or the allocations under an S Corporation, from the participants. That's number one. Number two. The form 5500s that we laid out in our brief and in the record show that somewhere between 55% to an upper 60% at any given time of the participants were either actually receiving their benefits or were entitled to receive their benefits. And in order to do that, they have to file an election. They get sent a form under the distribution policy for the E-stop, which, by the way, comes from the committee. I'm going to stop you because you're past your time, but I'm going to ask one more question. Is there any circumstance under which these people are entitled to receive from the debtors more than the current value of the stock? In other words, whatever's left in the estate after prior claims are paid. Well, this is a fully funded bankruptcy, so everybody's getting paid. Right, but the put option requires purchase at fair market value, right? My esteemed colleague would tell you there is no put option here, but yes, ordinarily a put option, yes, at fair market value. Okay, all right. Okay, I think I understand your point. So thank you very much. The time's exhausted. The matter's submitted, and we'll give you a decision in due course. Thank you. Thank you. May we be excused? Of course, yes. Thank you.
judges: Faris, Spraker, and Gan